EXHIBIT A

Prepared by: MICHELE SCLAFANI

# NOTE

ORIGINAL

| | | |
|---|---|---|
| JUNE 25, 2003 | JERICHO | NEW YORK |
| [Date] | [City] | [State] |

529 OCEAN AVENUE, MASSAPEQUA, NY 11758
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 303,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on
AUGUST 01, 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 01, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 1,603.50 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: MJM

VMP MORTGAGE FORMS - (800)521-7291

-5N(NY) (0006).01 CHL (09/02)(d)    Page 1 of 2    Form 3233 1/01



**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charge for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Michael Joseph Merlo_        (Seal)

MICHAEL JOSEPH MERLO      -Borrower

                                           (Seal)

                                           -Borrower

                                           (Seal)

                                           -Borrower

                                           [Sign Original Only]

*PAY TO THE ORDER OF*

*TO THE ORDER OF Countrywide Home Loans for the Benefit of Amalgamated Bank*

*WITHOUT RECOURSE*
*COUNTRYWIDE HOME LOANS, INC. FORMERLY*
*DBA AMERICA'S WHOLESALE LENDER*

*COUNTRYWIDE HOME LOANS, INC.*
*DOING BUSINESS UNDER THE FICTITIOUS*
*BUSINESS NAME OF AMERICA'S WHOLESALE*
*LENDER, A NEW YORK CORPORATION*

BY:    _Jennie Stephens_

*JENNIE STEPHENS*
*AVP and Assistant Secretary*

BY:            _David A. Spector_
*David A. Spector*
*Managing Director*



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 07-29-2003
Recorded Time: 12:27:23 p

Liber Book: M  24600
Pages From:        241
        To:        255

Control
Number:  1659
Ref #:  CU  040199
Doc Type:  M01  MORTGAGE

Record and Return To:
COUNTRYWIDE HOME LOANS INC
MS SV-79 DOCUMENT PROCESSING
1800 TAPO CANYON ROAD
SIMI VALLEY, CA  93063-6712

Location:                      Section Block    Lot    Unit
OYSTER BAY (2824)              0052    00212-00 00566

Consideration Amount:          303,000.00

|  | |
|---|---|
| Taxes Total | 3,005.00 |
| Recording Totals | 80.00 |
| Total Payment | 3,085.00 |

GSC001

**THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED**
KAREN V. MURPHY
COUNTY CLERK



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MICHELE SCLAFANI

——————————— [Space Above This Line For Recording Data] ———————————

[Doc ID #]

# MORTGAGE

MIN

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated   JUNE 25, 2003          , together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."
MICHAEL JOSEPH MERLO

whose address is
529 OCEAN AVENUE, MASSAPEQUA, NY 11758
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."
AMERICA'S WHOLESALE LENDER
will be called "Lender." Lender is a
CORPORATION                                                                    which exists
under the laws of NEW YORK                        . Lender's address is
P.O. Box 660694, Dallas, TX 75266-0694
(E) "Note." The note signed by Borrower and dated   JUNE 25, 2003          , will be called the "Note."
The Note shows that I owe Lender
THREE HUNDRED THREE THOUSAND and 00/100

Dollars (U.S. $ 303,000.00           ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  JULY 01, 2033

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 13
Initials: MJM

 -8A(NY) (0005).04 CHL (10/02).01(d)  VMP MORTGAGE FORMS - (800)521-7291
CONV/VA
Form 3033 1/01



**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called.the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | EXHIBIT A |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: mJm

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

529 OCEAN AVENUE                                                                                [Street]

MASSAPEQUA

11758    [Zip Code]. This Property is in    NASSAU    [City, Town or Village], New York    County.

It has the following legal description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**

(a) **Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

Initials: **MJM**

-6A(NY) (0005).04    CHL (10/02).01    Page 5 of 13    Form 3033 1/01

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of this Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS
I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.


BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          MICHAEL  JOSEPH  MERLO          -Borrower

_____          _____ (Seal)
                                                                         -Borrower

                                          _____ (Seal)
                                                                         -Borrower

                                          _____ (Seal)
                                                                         -Borrower

**STATE OF NEW YORK,**

County ss: *NASSAU*

On the **25** day of **JUNE 2003** before me, the undersigned, a notary public in and for said state, personally appeared

*MICHAEL JOSEPH MERLO*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

**Jared W Beschel**
**Notary Public State of New York**
No. 02BE6078979
Qualified in Nassau County
Commission Expires 05/18/06

## SCHEDULE "A"

All that certain property situate at Massapequa, Town of Oyster Bay, County of Nassau and State of New York, being more particularly described in a deed recorded in Liber 11495 at Page 157 among the land records of the County set forth above.

Ins.



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 09-23-2008
Recorded Time: 11:04:57 a

Liber Book: M  33256
Pages From:      331
        To:      333

Record and Return To:
ESCHEN FRENKEL ETAL
20 W MAIN STREET
BAYSHORE, NY  11706

Control
Number:  1995
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M 24600 Page: 241

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| OYSTER BAY (2824) | 0052 | 00212-00 | 00566 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00567 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00568 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00569 | |

.

.

| | |
|---|---|
| Taxes Total | .00 |
| Recording Totals | 44.00 |
| Total Payment | 44.00 |

MXP001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK

RECORD & RETURN TO:
SCHEN, FRENKEL, WEISMAN & GORDON, LLP
20 West Main Street
Bay Shore, New York 11706

SECTION: 52
BLOCK: 212
LOT: 566-569
COUNTY: Nassau

## ASSIGNMENT OF MORTGAGE

X 4318 Muller Rd; Flint MT 47507

Know that Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender ("Assignor"), having a place of business at 4500 Park Granada, Calabasas, CA 91302-1613, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by Countrywide Home Loans, Inc. for the Benefit of Amalgamated Bank, ("Assignee"), having a place of business at 7105 Corporate Drive, PTX-C35, Plano, TX 75024, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Nassau, for the premises known as 529 Ocean Avenue, Massapequa, NY 11758, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows.

| | |
|---|---|
| MORTGAGOR: | Michael Joseph Merlo |
| MORTGAGEE: | Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender |
| AMOUNT: | 303,000.00 |
| DATE: | June 25, 2003 |
| RECORDED: | July 29, 2003 |
| LIBER: | 24600 |
| PAGE: | 241 |

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this ___ day of **SEP 0 8 2008** 2008.

IN PRESENCE OF:

Mary Chavarria

Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender:

BY: 

**Micall Bachman, Vice President**
Officer of MERS

STATE OF **TEXAS**        )
                         ) SS.:
COUNTY OF **COLLIN**      )

On the ___ day of **SEP 0 8 2008** , in the year 2008, before me, the undersigned, personally appeared **Micall Bachman** , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in **COLLIN** County.

Kathy Repka
Notary Public

Our file No.: 29385

KATHY REPKA
My Commission Expires
November 16, 2010

Generated by PDFKit.NET Evaluation



## SCHEDULE "A"

**Address:**
529 OCEAN AVENUE
MASSAPEQUA, NY 11758

LEGAL ON MORTGAGE RECITES:

ALL THAT CERTAIN PROPERTY SITUATE AT MASSAPEQUA, TOWN OF OYSTER BAY, COUNTY OF NASSAU AND STATE OF NEW YORK, BEING MORE PARTICULARLY DESCRIBED IN A DEED RECORDED IN LIBER 11495 AT PAGE 157 AMONG THE LAND RECORDS OF THE COUNTY SET FORTH ABOVE.

The legal description on the Mortgage varies in language from the legal description on the Deed.

THE LEGAL DESCRIPTION ON THE MORTGAGE ONLY REFERENCES THE DEED.

THE LEGAL DESCRIPTION ON THE DEED RECITES:

"ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AD BEING AT MASSAPEQUA, IN THE TOWN OF OYSTER BAY, COUNTY OF NASSAU AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS AND BY THE LOTS NUMBERS 566, 567, 568, AND 569 IN BLOCK NUMBER 15 ON A CERTAIN MAP ENTITLED, "MAP OF PROPERTY OF QUEENS LAND & TITLE CO., SECTION I AT MASSAPEQUA, L.L. SURVEYED 1907, BY ALVIN G. SMITH, C.E., FREEPORT L.I." AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU ON SEPTEMBER 3, 1907 AS MAP NUMBER 50, CASE NUMBER 370, WHICH SAID LOTS WHEN TAKEN TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF OCEAN AVENUE, DISTANT 68.37 FEET NORTHERLY FROM THE CORNER FORMED BY THE WESTERLY SIDE OF OCEAN AVENUE AND THE NORTHERLY SIDE OF PENNSYLVANIA AVENUE;

RUNNING THENCE NORTH 66 DEGREES 27 MINUTES WEST 128.72 FEET;

THENCE NORTH 30 DEGREES 35 MINUTES EAST 69.82 FEET;

THENCE SOUTH 66 DEGREES 27 MINUTES EAST 131.56 FEET TO THE WESTERLY SIDE OF OCEAN AVENUE;

Click here to unlock PDFKit.NET

NC CLERK



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 03-04-2010
Recorded Time: 11:44:35 a

   Liber Book: M  34642
   Pages From:   730
         To:   733

Record and Return To:
FRENKEL LAMBERT WEISS WEISMAN & GORDON
20 WEST MAIN ST
BAY SHORE, NY  11706

     Control
     Number:  1191
       Ref #:
   Doc Type: M23  ASSIGN MORTGAGE

   Refers to: Book: M 24600 Page: 241

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| OYSTER BAY (2824) | 0052 | 00212-00 | 00566 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00567 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00568 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00569 | |

|  |  |
|---|---|
| Taxes Total | .00 |
| Recording Totals | 70.00 |
| Total Payment | 70.00 |

AAR001

**THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED**
MAUREEN O'CONNELL
COUNTY CLERK



NC CLERK

RECORD & RETURN TO
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP
20 West Main Street
Bay Shore, New York 11706

SECTION: 52
BLOCK: 212
LOT: 566-569
COUNTY: Nassau

## ASSIGNMENT OF MORTGAGE

Know that Countrywide Home Loans, Inc. for the Benefit of Amalgamated Bank ("Assignor"), having a place of business at c/o 7105 Corporate Drive, PTX-C35, Plano, TX 75024, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP ("Assignee"), having a place of business at 7105 Corporate Drive, PTX-C35, Plano, TX 75024, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Nassau, for the premises known as 529 Ocean Avenue, Massapequa, NY 11758, together with the note or obligation described and secured by said mortgage, and the monies due and to grow due thereon with the interest, as follows:

MORTGAGOR. Michael Joseph Merlo
MORTGAGEE. Mortgage Electronic Registration Systems, Inc , acting solely
as a nominee for America's Wholesale Lender
AMOUNT. 303,000.00
DATE. June 25, 2003
RECORDED July 29, 2003
LIBER. 24600 ✓
PAGE 241 ✓

The note and mortgage were assigned to Countrywide Home Loans, Inc. for the Benefit of Amalgamated Bank by an assignment recorded on September 23, 2008 in Book 33256 at Page 331

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever

In Witness whereof, the Assignor has hereunto set her/his hand this 3 day of Feb, 2010

IN PRESENCE OF

Daniel Redoood

Countrywide Home Loans, Inc. for the Benefit
of Amalgamated Bank

By
Sandra Williams-Assist. Vice President
As attorney in fact pursuant to power of attorney

or
as authorized agent pursuant to Board of
Resolutions and/or appointment

STATE OF Texas
COUNTY OF Dallas  } SS

LEGIBILITY POOR
FOR MICROFILM

On the 3 day of Feb, in the year 2010, before me, the undersigned, personally appeared **Sandra Williams**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in him/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in Dallas County

Notary Public

WANDA MCGOWAN
My Commission Expires
March 5, 2013

Generated by PDFKit.NET Evaluation



**LandSafe.**
National Default Services

2270 Lakeside Blvd.
MS: RLS-2-174
Richardson, TX 75082

## SCHEDULE "A"

**Address:**
529 OCEAN AVENUE
MASSAPEQUA, NY 11758

LEGAL ON MORTGAGE RECITES

ALL THAT CERTAIN PROPERTY SITUATE AT MASSAPEQUA, TOWN OF OYSTER BAY,
COUNTY OF NASSAU AND STATE OF NEW YORK, BEING MORE PARTICULARLY
DESCRIBED IN A DEED RECORDED IN LIBER 11495 AT PAGE 157 AMONG THE LAND
RECORDS OF THE COUNTY SET FORTH ABOVE.

**The legal description on the Mortgage varies in language from the legal description on the Deed.**

THE LEGAL DESCRIPTION ON THE MORTGAGE ONLY REFERENCES THE DEED.

THE LEGAL DESCRIPTION ON THE DEED RECITES

"ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AD BEING AT MASSAPEQUA, IN
THE TOWN OF OYSTER BAY, COUNTY OF NASSAU AND STATE OF NEW YORK. KNOWN
AND DESIGNATED AS AND BY THE LOTS NUMBERS 566, 567, 568, AND 569 IN BLOCK
NUMBER 15 ON A CERTAIN MAP ENTITLED, "MAP OF PROPERTY OF QUEENS LAND &
TITLE CO. SECTION I AT MASSAPEQUA, L L. SURVEYED 1907, BY ALVIN G SMITH, C E.,
FREEPORT L I" AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU
ON SEPTEMBER 3, 1907 AS MAP NUMBER 50, CASE NUMBER 370, WHICH SAID LOTS
WHEN TAKEN TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS
FOLLOWS

BEGINNING AT A POINT ON THE WESTERLY SIDE OF OCEAN AVENUE, DISTANT 68 37
FEET NORTHERLY FROM THE CORNER FORMED BY THE WESTERLY SIDE OF OCEAN
AVENUE AND THE NORTHERLY SIDE OF PENNSYLVANIA AVENUE.

RUNNING THENCE NORTH 86 DEGREES 27 MINUTES WEST 128 72 FEET.

THENCE NORTH 30 DEGREES 35 MINUTES EAST 89 82 FEET;

THENCE SOUTH 86 DEGREES 27 MINUTES EAST 131 56 FEET TO THE WESTERLY SIDE OF
OCEAN AVENUE:

Click here to unlock PDFKit.NET

Generated by PDFKit.NET Evaluation



**LandSafe.**
National Default Services

2270 Lakeside Blvd.
MS: RLS-2-174
Richardson, TX 75082

## SCHEDULE "A" (Continued)

THENCE ALONG THE WESTERLY SIDE OF OCEAN AVENUE SOUTH 32 DEGREES 11 MINUTES WEST 91.16 FEET TO THE POINT OR PLACE OF BEGINNING *

Click here to unlock PDFKit.NET

NY CLERK



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 05-09-2013
Recorded Time: 10:46:34 a

Record and Return To:
WEB TITLE AGENCY
500-A CANAL VIEW BOULEVARD
ROCHESTER, NY 14623

    Liber Book: M 38658
   Pages From: 281
        To: 284

      Control
      Number: 495
       Ref #:
   Doc Type: M23 ASSIGN MORTGAGE

   Refers to: Book: M 24600 Page: 241

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| OYSTER BAY (2824) | 0052 | 00212-00 | 00566 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00567 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00568 | |
| OYSTER BAY (2824) | 0052 | 00212-00 | 00569 | |

|  |  |
|---|---|
| Taxes Total | .00 |
| Recording Totals | 210.00 |
| Total Payment | 210.00 |

MXP001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK



Record & Return
Web Title Agency
500-A Canal View Boulevard        wden, LLP
Rochester, NY 14623

SECTION:     52
BLOCK:       212
LOTS:        566-569
COUNTY:      Nassau

## ASSIGNMENT OF MORTGAGE

Know that **Bank of America, N.A s/b/m to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP** ("Assignor"), having a place of business at 7105 Corporate Drive, Plano, TX 75024, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by **Amalgamated Bank** ("Assignee"), having a place of business at 275 7th Avenue, New York, NY 10001, does hereby assign and transfer unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Nassau, for the premises known as 529 Ocean Avenue, Massapequa, NY 11758, together with all of assignor's rights with respect to the underlying note, as follows:

| | |
|---|---|
| MORTGAGOR: | Michael Joseph Merlo |
| MORTGAGEE: | Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender |
| AMOUNT: | 303,000.00 |
| DATE: | June 25, 2003 |
| RECORDED: | July 29, 2003 |
| LIBER: | 24600 |
| PAGE: | 241 |

The note and mortgage were assigned to Countrywide Home Loans, Inc. for the Benefit of Amalgamated Bank by an assignment recorded on September 23, 2008 in Book: 33256 at Page: 331.

Thereafter, the note and mortgage were assigned to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP by an assignment which was recorded on March 4, 2010 Liber 34642 at Pages 730.

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her his hand this 12 day of March, 2013.

IN PRESENCE OF:

Stephen Mark Walko Jr
3-12-20 3

Bank of America, N.A s/b/m to BAC Home Loans
Servicing, LP f/k/a Countrywide Home Loans
Servicing, LP :

BY: Jodi A. Zout 3/12/13
        Jodi A. Zook
Title: Assistant Vice President
                                (AVP)

## ACKNOWLEDGMENT

STATE OF Pennsylvania    )
                         )  SS.:
COUNTY OF Allegheny      )

On the 12 day of March, in the year 2013, before me, the undersigned, personally appeared Jodi A. Zook, AVP, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in Allegheny County.

Robert M Thirkel
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Robert M. Thirkel, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Jan. 29, 2016

Our file No.: 01-029385-F00; [Michael Joseph Merlo, 529 Ocean Avenue, Massapequa, NY 11758]

# UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT
## (OUTSIDE OF NEW YORK STATE)

STATE OF _Pennsylvania_ )

County of _Allegheny_ )

On the _12_ day of _March_, in the year of 20 _13_ before me, the undersigned, personally appeared _Jodi A. Zook, AVP_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(is)(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in _Pittsburgh_, _Pennsylvania_. (Inert the city or political subdivision and the state or county or other place the acknowledgement was taken).

_Robert M. Thiebaud_ NOTARY PUBLIC

(Signature and office of individual taking proof.)

**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Robert M. Thiebaud, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Jan. 19, 2016

## CERTIFICATE OF CONFORMITY
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ALLEGHENY

That the undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the Commonwealth of Pennsylvania; that he/she is a person duly qualified to make this Certificate of Conformity pursuant to NYS RPL 299-a; that he/she does hereby certify that the acknowledgement attached hereto was taken in the manner prescribed by the laws of the Commonwealth of Pennsylvania and that the form of acknowledgment conforms to the laws of the Commonwealth Of Pennsylvania.

IN WITNESS WHEREOF, I have hereunto set my hand this _12th_ day of _March_, 20 _13_.

Print Name: _Arthur K. Eigle_
PA Attorney I.D. No.: _950087_
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222

Michael Joseph Merlo, 529 Ocean Avenue, Massapequa, NY 11758

Generated by PDFKit.NET Evaluation

RECEIVED IN
THIS CONDITION





## SCHEDULE "A"

**Address:**
529 OCEAN AVENUE
MASSAPEQUA, NY 11758

LEGAL ON MORTGAGE RECITES:

ALL THAT CERTAIN PROPERTY SITUATE AT MASSAPEQUA, TOWN OF OYSTER BAY,
COUNTY OF NASSAU AND STATE OF NEW YORK, BEING MORE PARTICULARLY
DESCRIBED IN A DEED RECORDED IN LIBER 11495 AT PAGE 157 AMONG THE LAND
RECORDS OF THE COUNTY SET FORTH ABOVE.

**The legal description on the Mortgage varies in language from the legal description on the Deed.**

THE LEGAL DESCRIPTION ON THE MORTGAGE ONLY REFERENCES THE DEED.

THE LEGAL DESCRIPTION ON THE DEED RECITES:

"ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AD BEING AT MASSAPEQUA, IN
THE TOWN OF OYSTER BAY, COUNTY OF NASSAU AND STATE OF NEW YORK, KNOWN
AND DESIGNATED AS AND BY THE LOTS NUMBERS 566, 567, 568, AND 569 IN BLOCK
NUMBER 15 ON A CERTAIN MAP ENTITLED, "MAP OF PROPERTY OF QUEENS LAND &
TITLE CO., SECTION I AT MASSAPEQUA, L.L. SURVEYED 1907, BY ALVIN G. SMITH, C.E.,
FREEPORT L.I" AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU
ON SEPTEMBER 3, 1907 AS MAP NUMBER 50, CASE NUMBER 370, WHICH SAID LOTS
WHEN TAKEN TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF OCEAN AVENUE, DISTANT 68.37
FEET NORTHERLY FROM THE CORNER FORMED BY THE WESTERLY SIDE OF OCEAN
AVENUE AND THE NORTHERLY SIDE OF PENNSYLVANIA AVENUE;

RUNNING THENCE NORTH 86 DEGREES 27 MINUTES WEST 128.72 FEET;

THENCE NORTH 30 DEGREES 35 MINUTES EAST 89.82 FEET;

THENCE SOUTH 66 DEGREES 27 MINUTES EAST 131.56 FEET TO THE WESTERLY SIDE OF
OCEAN AVENUE;

Click here to unlock PDFKit.NET



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 06-30-2014        Record and Return To:
Recorded Time: 11:29:06 a        WEB TITLE AGENCY
                                 500-A CANAL VIEW BLVD
     Liber Book: M  39772        ROCHESTER, NY  14623
     Pages From:        29
            To:         33

        Control
        Number:   1131
          Ref #:
     Doc Type: M23  ASSIGN MORTGAGE

     Refers to: Book: M 24600 Page: 241

Location:                   Section Block    Lot    Unit
OYSTER BAY (2824)            0052   00212-00 00566
OYSTER BAY (2824)            0052   00212-00 00567
OYSTER BAY (2824)            0052   00212-00 00568
OYSTER BAY (2824)            0052   00212-00 00569

                              Taxes Total          .00
                            Recording Totals     215.00
CHK001                        Total Payment      215.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                       MAUREEN O'CONNELL
                         COUNTY CLERK

Recording Requested By:
Nationstar Mortgage

Record & Return
Web Title Agency
500-A Canal View Boulevard
Rochester, NY 14623



## CORPORATE ASSIGNMENT OF MORTGAGE

Nassau, New York
SELLER'S SERVICING # [redacted] "MERLO"

Date of Assignment: June 10th, 2014
Assignor: AMALGAMATED BANK, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

Executed By: MICHAEL JOSEPH MERLO  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S WHOLESALE LENDER
Date of Mortgage: 08/25/2003 Recorded: 07/29/2003  in Book/Reel/Liber: M 24600 Page/Folio: 241  in the County of Nassau, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S WHOLESALE LENDER TO COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK
Dated: 09/08/2008 Recorded: 09/23/2008  in Book/Reel/Liber: M 33256 Page/Folio: 331
-Assigned Wholly by COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK TO BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING LP Dated: 02/03/2010
Recorded: 03/04/2010  in Book/Reel/Liber: M 34642 Page/Folio: 730
-Assigned Wholly by BANK OF AMERICA N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING LP TO AMALGAMATED BANK Dated: 03/12/2013 Recorded:
05/08/2013  in Book/Reel/Liber: M 38658 Page/Folio: 281
Loan Amount: $303,000.00
Section/Block/Lot 0052/00212-00/00568, 0052/00212-00/00568, 0052/00212-00/00567, 0052/00212-00/00568

Property Address: 529 OCEAN AVENUE, MASSAPEQUA, NY 11758

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $303,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

AMALGAMATED BANK, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT
On 06/10/2014

By: _____
     Cecilia Skinner        Assistant
Secretary

CLERK

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On the _10 th_ day of _June_ in the year _2014_ before me, the undersigned, personally appeared _Cecilia Spooner_, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Scotts Bluff, State of Nebraska.

WITNESS my hand and official seal,

_Loran C Shaw_

Notary Expires: _7 / 5-22-2017_
Scotts Bluff, Nebraska

GENERAL NOTARY-State of Nebraska
LORAN C SHAW
My Comm. Exp. May 22, 2017

(This area for notarial seal)

Generated by PDFKit.NET Evaluation



2270 Lakeside Blvd.
MS; RLS-2-174
Richardson,TX 75082

## SCHEDULE "A"

**Address:**
529 OCEAN AVENUE
MASSAPEQUA, NY 11758

LEGAL ON MORTGAGE RECITES:

ALL THAT CERTAIN PROPERTY SITUATE AT MASSAPEQUA, TOWN OF OYSTER BAY,
COUNTY OF NASSAU AND STATE OF NEW YORK, BEING MORE PARTICULARLY
DESCRIBED IN A DEED RECORDED IN LIBER 11495 AT PAGE 157 AMONG THE LAND
RECORDS OF THE COUNTY SET FORTH ABOVE.

The legal description on the Mortgage varies in language from the legal description on the Deed.

THE LEGAL DESCRIPTION ON THE MORTGAGE ONLY REFERENCES THE DEED.

THE LEGAL DESCRIPTION ON THE DEED RECITES:

"ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AD BEING AT MASSAPEQUA, IN
THE TOWN OF OYSTER BAY, COUNTY OF NASSAU AND STATE OF NEW YORK, KNOWN
AND DESIGNATED AS AND BY THE LOTS NUMBERS 566, 567, 568, AND 569 IN BLOCK
NUMBER 15 ON A CERTAIN MAP ENTITLED, "MAP OF PROPERTY OF QUEENS LAND &
TITLE CO., SECTION I AT MASSAPEQUA, L.L. SURVEYED 1907, BY ALVIN G. SMITH, C.E.,
FREEPORT L.I." AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF NASSAU
ON SEPTEMBER 3, 1907 AS MAP NUMBER 50, CASE NUMBER 370, WHICH SAID LOTS
WHEN TAKEN TOGETHER ARE MORE PARTICULARLY BOUNDED AND DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF OCEAN AVENUE, DISTANT 68.37
FEET NORTHERLY FROM THE CORNER FORMED BY THE WESTERLY SIDE OF OCEAN
AVENUE AND THE NORTHERLY SIDE OF PENNSYLVANIA AVENUE;

RUNNING THENCE NORTH 86 DEGREES 27 MINUTES WEST 128.72 FEET;

THENCE NORTH 30 DEGREES 35 MINUTES EAST 89.82 FEET;

THENCE SOUTH 86 DEGREES 27 MINUTES EAST 131.56 FEET TO THE WESTERLY SIDE OF
OCEAN AVENUE;

Click here to unlock PDFKit.NET

Generated by PDFKit.NET Evaluation



LandSafe.
National Default Services

2270 Lakeside Blvd.
MS: RLS-2-174
Richardson, TX 75082

## SCHEDULE "A" (Continued)

THENCE ALONG THE WESTERLY SIDE OF OCEAN AVENUE SOUTH 32 DEGREES 11
MINUTES WEST 91.16 FEET TO THE POINT OR PLACE OF BEGINNING."

Click here to unlock PDFKit.NET

# **** Electronically Filed Document ****

Instrument Number: 2018-38966

Recorded As:      **EX-M23 - ASSIGN MORT**

Recorded On:      May 07, 2018

Recorded At:      02:53:37 pm            Receipt Number:    1074025

Number of Pages:  5                     Processed By:      001 CJ

Book-VI/Pg:       Bk-M  VI-42820  Pg-717

Total Rec Fee(s): $365.00

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 65.00        EX-Blocks - Mortgages - $300          $ 300.00

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 52 | 212 | 566 | | OYSTER BAY |
| 52 | 212 | 567 | | OYSTER BAY |
| 52 | 212 | 568 | | OYSTER BAY |
| 52 | 212 | 569 | | OYSTER BAY |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell

County Clerk Maureen O'Connell

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Section: 0052 Lot: 00566; 00567; 00568; 00569 Block: 00212-00
Loan No
Sver Ln No:
GS II

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR), does hereby grant, assign and transfer to AMALGAMATED BANK, . whose address is 275 SEVENTH AVENUE, NEW YORK, NEW YORK 10001, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/25/2003
Original Loan Amount: $303,000.00
Executed by (Borrower(s)): MICHAEL JOSEPH MERLO
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book/Liber/Volume M 24608, Page 241,
Document/Instrument No: 2003872901659; REF#: CU 849199 in the Recording District of NASSAU, NY, Recorded on 7/29/2003. MUNICIPALITY: TOWNSHIP OF OYSTER BAY

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 529 OCEAN AVENUE, MASSAPEQUA, NEW YORK 11758

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **DEC 14 2017**

NATIONSTAR MORTGAGE LLC

By: Mohammed Hameed

Title: Vice President

Witness Name: Daniela Horvath

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **Texas**
County of **Dallas**

On **DEC 14 2017** before me, **Colleen Barnett**, a Notary Public, personally appeared **Mohamed Hameed**, **Vice President** offer NATIONSTAR MORTGAGE LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **Texas** that the foregoing paragraph is true and correct. I further certify **Mohamed Hameed**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **Dallas**, State of **Texas**.

Witness my hand and official seal.

(Notary Name): **Colleen Barnett**
My commission expires: **NOV 3 0 202**

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453913

**EXHIBIT "A"**

**Assignment Chain**

**Mortgage**

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | MICHAEL JOSEPH MERLO |
| Origination Balance: | $303,000.00 |
| Origination Date: | 06/25/2003 |
| Recording Date: | 07/29/2003 |
| Mortgage Recording Details: | Book: M 24600; Page: 241; Instrument: 2003072901659; REF#: CU 040199 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS |
| To: | COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK |
| AOM Dated: | 09/08/2008 |
| AOM Recorded: | 09/23/2008 |
| AOM Recording Details: | Book: M 33256; Page: 331; DocumentNo: 2008092301995 |

| | |
|---|---|
| Assigned From: | COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK |
| To: | BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP |
| AOM Dated: | 02/03/2010 |
| AOM Recorded: | 03/04/2010 |
| AOM Recording Details: | Book: M 34642; Page: 730; DocumentNo: 2010030401191 |

| | |
|---|---|
| Assigned From: | BANK OF AMERICA, N.A. S/B/M TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP |
| To: | AMALGAMATED BANK |
| AOM Dated: | 03/12/2013 |
| AOM Recorded: | 05/09/2013 |
| AOM Recording Details: | Book: M 38658; Page: 281; DocumentNo: 2013050900495 |

| | |
|---|---|
| Assigned From: | AMALGAMATED BANK, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT |
| To: | NATIONSTAR MORTGAGE LLC |
| AOM Dated: | 06/10/2014 |
| AOM Recorded: | 06/30/2014 |
| AOM Recording Details: | Book: M 39772; Page: 29; DocumentNo: 2014063001131 |

| | |
|---|---|
| **Assigned From:** | **NATIONSTAR MORTGAGE LLC** |
| **To:** | **AMALGAMATED BANK** |
| **AOM Recorded:** | **To be recorded concurrently herewith** |

## \*\*\*\* Electronically Filed Document \*\*\*\*

Instrument Number: 2018-39899

Recorded As:     **EX-M23 - ASSIGN MORT**

Recorded On:     May 07, 2018

Recorded At:     02:54:18 pm          Receipt Number:     1074025

Number of Pages:  5                   Processed By:       001 CJ

Book-VI/Pg:      Bk-M  VI-42820  Pg-722

Total Rec Fee(s): $365.00

\*\* Examined and Charged as Follows \*\*

23 - ASSIGN MORTGAGE          $ 65.00     EX-Blocks - Mortgages - $300      $ 300.00

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 52 | 212 | 596 | | OYSTER BAY |
| 52 | 212 | 597 | | OYSTER BAY |
| 52 | 212 | 598 | | OYSTER BAY |
| 52 | 212 | 599 | | OYSTER BAY |

\*\*\*\*\*\*\*\*\*\*\*\*THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*
County Clerk Maureen O'Connell

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use _____

Section: 8052 Lot: 00566; 00567; 00568; 00569 Block: 00212-00

Loan No: ████████████

Svcr La No: ████████████

GS ID: ████



## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, AMALGAMATED BANK, whose address is 275 SEVENTH AVENUE, NEW YORK, NY 10001, (ASSIGNOR), does hereby grant, assign and transfer to MTGLQ INVESTORS, L.P., whose address is 6011 CONNECTION DRIVE, IRVING, TX 75039, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/25/2003
Original Loan Amount: $383,000.00
Executed by (Borrower(s)): MICHAEL JOSEPH MERLO
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS
Filed of Record: In Book/Liber/Volume M 24600, Page 241,
Document/Instrument No: 2003072901659; REF#: CU 040199 in the Recording District of NASSAU, NY,
Recorded on 7/29/2003. MUNICIPALITY: TOWNSHIP OF OYSTER BAY

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: 529 OCEAN AVENUE, MASSAPEQUA, NEW YORK 11758

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ JAN 1 6 2019 _____

AMALGAMATED BANK, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT

By: DAVE SLEAR                           Witness Name: _____ Danielle Elkinson
Title: VICE PRESIDENT

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **TEXAS**
County of    **DALLAS**

On **JAN 16 2018**, before me, _____**Blake Doyle**_____, a Notary Public, personally appeared DAVE SLEAR, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR AMALGAMATED BANK, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of TEXAS that the foregoing paragraph is true and correct.  I further certify DAVE SLEAR, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of DALLAS, State of TEXAS.

Witness my hand and official seal.

(Notary Name): _____**Blake Doyle**_____
My commission expires: **SEP 14 2021**

BLAKE DOYLE
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 131278961

**EXHIBIT "A"**

**Assignment Chain**

**Mortgage**

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | MICHAEL JOSEPH MERLO |
| Origination Balance: | $303,000.00 |
| Origination Date: | 06/25/2003 |
| Recording Date: | 07/29/2003 |
| Mortgage Recording Details: | Book: M 24600; Page: 241; Instrument: 2003072901659; REF#: CU 040199 |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS |
| To: | COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK |
| AOM Dated: | 09/08/2008 |
| AOM Recorded: | 09/23/2008 |
| AOM Recording Details: | Book: M 33256; Page: 331; DocumentNo: 2008092301995 |

| | |
|---|---|
| Assigned From: | COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK |
| To: | BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP |
| AOM Dated: | 02/03/2010 |
| AOM Recorded: | 03/04/2010 |
| AOM Recording Details: | Book: M 34642; Page: 730; DocumentNo: 2010030401191 |

| | |
|---|---|
| Assigned From: | BANK OF AMERICA, N.A. S/B/M TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP |
| To: | AMALGAMATED BANK |
| AOM Dated: | 03/12/2013 |
| AOM Recorded: | 05/09/2013 |
| AOM Recording Details: | Book: M 38658; Page: 281; DocumentNo: 2013050900495 |

| | |
|---|---|
| Assigned From: | AMALGAMATED BANK, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT |
| To: | NATIONSTAR MORTGAGE LLC |
| AOM Dated: | 06/10/2014 |
| AOM Recorded: | 06/30/2014 |
| AOM Recording Details: | Book: M 39772; Page: 29; DocumentNo: 2014063001131 |

| | |
|---|---|
| **Assigned From:** | **NATIONSTAR MORTGAGE LLC** |
| **To:** | **AMALGAMATED BANK** |
| **AOM Recorded:** | **To be recorded concurrently herewith** |
| | |
| **Assigned From:** | **AMALGAMATED BANK** |
| **To:** | **MTGLQ INVESTORS, LP** |
| **AOM Recorded:** | **To be recorded concurrently herewith** |

# **** Electronically Filed Document ****

Instrument Number: **2020-22557**

Recorded As:      **EX-M23 - ASSIGN MORT**

Recorded On:      **March 03, 2020**

Recorded At:      **02:08:27 pm**          Receipt Number:      **1786413**

Number of Pages:   **3**                        Processed By:      **001 KS**

Book-VI/Pg:      **Bk-M  VI-44068  Pg-291**

Total Rec Fee(s): **$355.00**

## ** Examined and Charged as Follows **

**23 - ASSIGN MORTGAGE**      $ 55.00      **EX-Blocks - Mortgages - $300**      $ 300.00

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 52 | 212 | 566 | | OYSTER BAY |
| 52 | 212 | 567 | | OYSTER BAY |
| 52 | 212 | 568 | | OYSTER BAY |
| 52 | 212 | 569 | | OYSTER BAY |

---

## ***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

---



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

Recording Requested By:
_____

Prepared By: Audrey B Trumble
855-369-2410

Case Nbr:
Ref Number:
Property Address:
529 OCEAN AVENUE
MASSAPEQUA, NY 11758
Property Location:
Township of OYSTER BAY

NY9-AM-OS-S        12/23/2019  BALBECWLS                     This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, MTGLQ INVESTORS, L.P., the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 2001 ROSS AVENUE, SUITE 2800, DALLAS, TX 75201 does hereby grant, sell, assign, transfer and convey unto US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST whose address is 7114 E STETSON DRIVE, SUITE 250, SCOTTSDALE, AZ 85251 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Mortgagee: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS |
| Made By: | MICHAEL JOSEPH MERLO |
| Date of Mortgage: | 6/25/2003 |
| Original Loan Amount: | $303,000.00 |
| Section: 52    Lot: 566, 567, 568, 569    Block: 212 | |

Recorded in Nassau County, NY on: 7/29/2003, book M 24600, page 241 and instrument number 2003072901659, REF# CU 040199

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
ASSIGNMENT OF MORTGAGE DATED 9/8/2008, From MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS, To COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK, Recorded On 9/23/2008 In Book/Liber:M 33256 Page:331 Instrument Number:2008092301995
ASSIGNMENT OF MORTGAGE DATED 2/3/2010, From COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED BANK, To BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP, Recorded On 3/4/2010 In Book/Liber:M 34662 Page:730 Instrument Number:2010030401191
ASSIGNMENT OF MORTGAGE DATED 3/12/2013, From BANK OF AMERICA, N.A S/B/M TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, To AMALGAMATED BANK, Recorded On 5/9/2013 In Book/Liber:M 38658 Page:281 Instrument Number:2013050900495
ASSIGNMENT OF MORTGAGE DATED 6/10/2014, From AMALGAMATED BANK, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT, To NATIONSTAR MORTGAGE LLC, Recorded On 6/30/2014 In Book/Liber:M 39772 Page:29 Instrument Number:2014063001131
ASSIGNMENT OF MORTGAGE DATED 12/14/2017, From NATIONSTAR MORTGAGE LLC, To AMALGAMATED BANK, Recorded On 5/7/2018 In Book/Liber:M 42820 Page:717 Instrument Number:2018-39688
ASSIGNMENT OF MORTGAGE DATED 1/16/2018, From AMALGAMATED BANK, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT, To MTGLQ INVESTORS, L.P., Recorded On 5/7/2018 In Book/Liber:M 42820 Page:722 Instrument Number:2018-39689



IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:

~~JAN. 2 2 2020~~

MTGLQ INVESTORS, L.P.

By: 

Andrea Rhinehardt, Authorized Signatory

STATE OF TX
County of Dallas

On the _____ day of **JAN. 2 2 2020** , in the year 20_____, before me the undersigned, personally appeared Andrea Rhinehardt, Authorized Signatory for MTGLQ INVESTORS, L.P. personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that (he)(she)(they) executed the same in (his)(her)(their) capacity(y)(ies), and that by (his)(her)(their) signature(s) on the instrument. the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the _____ Dallas, TX _____ (add the city or political subdivision and the state or country or other place the acknowledgement was taken).

_____
Notary Public       Robert Edgar Keplinger Jr

NOTARY PUBLIC
Robert Edgar Keplinger Jr
My Commission Expires
04/04/2023
ID No 131980056
STATE OF TEXAS

# **** Electronically Filed Document ****

Instrument Number:  2018-39689

Recorded As:        EX-M23 - ASSIGN MORT

Recorded On:        May 07, 2018

Recorded At:        02:54:18 pm          Receipt Number:     1074025

Number of Pages:    5                    Processed By:       001 CI

Book-VI/Pg:         Bk-M  VI-42820  Pg-722

Total Rec Fee(s):   $365.00

** Examined and Charged as Follows **

23 - **ASSIGN MORTGAGE**        $ 65.00        EX-Blocks - Mortgages - $300        $ 300.00

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 52 | 212 | 566 | | OYSTER BAY |
| 52 | 212 | 567 | | OYSTER BAY |
| 52 | 212 | 568 | | OYSTER BAY |
| 52 | 212 | 569 | | OYSTER BAY |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*
**County Clerk Maureen O'Connell**

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Section: 0052 Lot: 00566-00569 Block: 00212-00
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE CABANA SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/25/2003
Original Loan Amount: $303,000.00
Executed by (Borrower(s)): **MICHAEL JOSEPH MERLO**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume M 24600, Page 241
Document/Instrument No: 2003072901659; REF#: CU 040199 in the Recording District of NASSAU, NY, Recorded on 7/29/2003. MUNICIPALITY: TOWN OF OYSTER BAY

Chain Exhibit:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **529 OCEAN AVENUE, MASSAPEQUA, NEW YORK 11758**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **2/10/2020**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**                                     Witness Name: **DIEP DOAN**
Title: **VICE PRESIDENT**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        **FLORIDA**
County of     **PINELLAS**

On **2/10/2020**, before me, **JAMIE OLGIA**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct.  I further certify **MURAT DENIZ**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **JAMIE OLGIA**
My commission expires: 04/12/2020

JAMIE OLGIA
MY COMMISSION # FF 981366
EXPIRES: April 12, 2020
Bonded Thru Budget Notary Services

.

**EXHIBIT "A"**
**Assignment Chain**

Mortgage
Lender:              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
                     AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS
Borrower:            MICHAEL JOSEPH MERLO
Origination Balance: $303,000.00
Origination Date:    06/25/2003
Recording Date:      07/29/2003
Mortgage Recording   Book: M 24600; Page: 241; Instrument: 2003072901659; REF#: CU 040199
Details:


Assigned From:       MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
                     AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS
To:                  COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED
                     BANK
AOM Dated:           09/08/2008
AOM Recorded:        09/23/2008
AOM Recording        Book: M 33256; Page: 331; DocumentNo: 2008092301995
Details:


Assigned From:       COUNTRYWIDE HOME LOANS, INC. FOR THE BENEFIT OF AMALGAMATED
                     BANK
To:                  BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                     SERVICING, LP
AOM Dated:           02/03/2010
AOM Recorded:        03/04/2010
AOM Recording        Book: M 34642; Page: 730; DocumentNo: 2010030401191
Details:


Assigned From:       BANK OF AMERICA, N.A S/B/M TO BAC HOME LOANS SERVICING, LP F/K/A
                     COUNTRYWIDE HOME LOANS SERVICING, LP
To:                  AMALGAMATED BANK
AOM Dated:           03/12/2013
AOM Recorded:        05/09/2013
AOM Recording        Book: M 38658; Page: 281; DocumentNo: 2013050900495
Details:


Assigned From:       AMALGAMATED BANK
To:                  NATIONSTAR MORTGAGE LLC
AOM Dated:           06/10/2014
AOM Recorded:        06/30/2014

| | |
|---|---|
| AOM Recording Details: | Book: M 39772; Page: 29; DocumentNo: 2014063001131 |
| | |
| Assigned From: | NATIONSTAR MORTGAGE LLC |
| To: | AMALGAMATED BANK |
| AOM Dated: | 12/14/2017 |
| AOM Recorded: | 05/07/2018 |
| AOM Recording Details: | Book: M 42820; Page: 717; DocumentNo: 2018-39688 |
| | |
| Assigned From: | AMALGAMATED BANK |
| To: | MTGLQ INVESTORS, L.P. |
| AOM Dated: | 01/16/2018 |
| AOM Recorded: | 05/07/2018 |
| AOM Recording Details: | Book: M 42820; Page: 722; DocumentNo: 2018-39689 |
| | |
| Assigned From: | MTGLQ INVESTORS, L.P. |
| To: | US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE TIKI SERIES IV TRUST |
| AOM Recorded: | To be recorded concurrently herewith |