UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re:

    Michael J. Merlo,                                                    Case no. 22-71690-reg

                                                                         Chapter 7

                                    Debtor.
--------------------------------------------------------------------X

## *Introduction*

Before the Court is a motion ("Motion") by SN Servicing Corporation as servicer for

U.S. Bank Trust National Association as Trustee of the Cabana Series IV Trust (the "Movant")

seeking to vacate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) and seeking *in*

*rem* relief pursuant to § 362(d)(4) with respect to Michael J. Merlo's (the "Debtor's") residence

("Property") [ECF 11].  The Motion is unopposed by the Debtor and the Court granted the

request for relief under § 362(d)(1) and (2) at a prior hearing.  For the reasons set forth below,

the request for *in rem* relief is granted.  While this is one motion in one case, it is representative

of a trend in this District.  Due to several factors, the number of creditors seeking *in rem* relief

under § 362(d)(4) has multiplied and continues to grow.  Some cases involve multiple filings by

different parties and others involve serial filings by the same debtor.  Other cases involve

transfers of real property or transfers of interests in real property without the consent of the

secured creditor or the Court.  As a result, secured creditors are prevented from exercising their

state law remedies while these debtors cycle through the bankruptcy system.

The focus of this statute is on the effect the conduct of the filer or filers has on the

secured creditor.  To the extent that the Court finds that the conduct appears to be a scheme to

hinder, delay or defraud the secured creditor, relief under this subsection is warranted.  While the

Court does not believe that a bright-line test can be crafted to ascertain when *in rem* relief under

§ 362(d)(4) should be granted, this Memorandum Decision provides some guidance to help determine when such a motion is appropriate.

If relief under § 362(d)(4) is granted and the secured creditor properly records the order then the automatic stay, which normally applies upon the filing of a case, is ineffective with respect to the real property at issue in a subsequent filer's case.  This is true regardless of whether that filer had any part in the scheme.  While this relief may seem extraordinary, it is consistent with other provisions of the Bankruptcy Code that limit protections otherwise afforded to debtors in the ordinary course.  Congress has added these provisions to the Bankruptcy Code to winnow out improper filings which were made solely to frustrate secured creditors from exercising their rights.  As with many of these provisions, it is not irreversible.  The impacted filer may seek to have the automatic stay imposed by providing evidence that good cause exists to impose the stay or that there has been a change in circumstances from a previous case.  The subsequent filer may also raise any issue in a non-bankruptcy forum they wish.

As a jurisdictional matter, the Court will consider granting relief under § 362(d)(4) in cases that are subject to being automatically dismissed pursuant to 11 U.S.C. § 521(i) so long as the *in rem* motion is filed prior to the 45th day after the petition date.  Under 11 U.S.C. § 349(b)(3), the Court has the discretion to so order that upon dismissal of a case, the Court may retain jurisdiction over property of the estate.  It can be difficult for a secured creditor to have its motion heard before the debtor's case is scheduled for automatic dismissal due to the debtor's failure to comply with the requirements of the Bankruptcy Code.  Retention of jurisdiction over the real property at issue to rule on an *in rem* motion despite dismissal of a case is an appropriate tool to curtail abuses of the bankruptcy system.

*Procedural History*

The Debtor filed a petition for relief under Chapter 7 on July 11, 2022.  The Debtor is represented by counsel in this case.  According to the Debtor's statement of intention filed with the petition, the Debtor will retain the Property and seek to obtain financing to pay off the mortgage held by the Movant. On August 19, 2022, the Movant filed the Motion.  A hearing on the Motion was held on September 12, 2022, at which hearing the Movant appeared.  The Court heard oral argument and granted the portion of the Motion seeking relief from the automatic stay pursuant to §362(d)(1) and (2).  The Court adjourned the portion of the Motion seeking *in rem* relief under § 362(d)(4). On September 20, 2022, the Chapter 7 Trustee filed a motion to dismiss the case due to the Debtor's failure to appear at a scheduled section 341 meeting.  The hearing on the Trustee's motion to dismiss was scheduled for October 31, 2022. The Trustee filed a certificate of no opposition and the motion to dismiss was marked submitted by the Court.

*Facts*

Prepetition, on June 25, 2003, the Debtor executed a note in the original principal amount of $303,000 secured by a mortgage in favor of the Movant's predecessor.  The Debtor became delinquent under the terms of the note and mortgage and a foreclosure action was commenced in state court. On August 30, 2016, a judgment of foreclosure and sale was entered.  Ex. B to the Motion. The Movant scheduled a foreclosure sale for January 17, 2017.  The Debtor and Maria Farella Merlo ("Spouse"), the Debtor's spouse, filed an emergency order to show cause in state court, which cancelled the first sale.  After various delays, the Movant scheduled a second sale for January 29, 2019.  On January 28, 2019, the Spouse filed a petition for relief under Chapter 7 (Case no. 19-70699) ("First Filing").  On May 21, 2019, the First Filing was dismissed on motion by the chapter 7 trustee based on the Spouse's failure to appear at the section 341 meeting.

The Movant scheduled another foreclosure sale for December 3, 2019.  On December 2, 2019, the Spouse filed a petition for relief under Chapter 13 (case no. 19-78128) ("Second Filing"), resulting in cancellation of the scheduled foreclosure sale. The Second Filing was automatically dismissed on January 17, 2020, pursuant to 11 U.S.C. § 521(i).  As a result of the Covid-19 pandemic, all foreclosure sales were suspended in New York State.  On February 21, 2022, after the moratorium on foreclosures was lifted in New York State, the Movant filed an application to notice a sale and obtain an auction date.  The State Court authorized the Movant to proceed with the foreclosure sale and a sale was scheduled for July 11, 2022.

On the morning of July 11, 2022, the Debtor filed this petition ("Third Filing") under Chapter 7 of the Bankruptcy Code.   According to the Debtor's Statement of Intention, he plans on reaffirming the debt owed to the Movant.  The Debtor lists the value of the Property at $600,505.00 and lists the total mortgage debt at $550,000.  According to the Movant the prepetition mortgage arrears are approximately $460,381.93.  The Debtor's schedule I reflects combined monthly income with the Spouse in the amount of $6,026.00, and schedule J reflects combined monthly expenses of $8,568.00.  Based on the information in the schedules, the Debtor has insufficient income to reaffirm the debt owed to Movant, let alone make consistent monthly mortgage payments to the Movant.  Neither the Debtor nor the Spouse have successfully completed a bankruptcy case under any chapter.  In the current case, the Debtor failed to appear at the section 341 meeting and the Trustee filed a motion to dismiss the case for this reason.  In addition, the Debtor has not filed a certification of completion of a financial management course, which would preclude the Debtor from receiving a discharge even if he successfully completed the other requirements in this case.  According to the Movant, *in rem* relief is appropriate because there have been three petitions filed between the Debtor and the Spouse and each of the

filings took place shortly before scheduled foreclosure sales.  In addition, there were serious

deficiencies with respect to each filing.  In the First Filing, the Spouse failed to appear at the

scheduled section 341 meeting.  In the Second Filing, the Spouse failed to file all of the

necessary documents.  In the Third Filing, the Debtor failed to appear at the scheduled section

341 meeting.  A feasible plan was never proposed in the Second Filing, and with respect to the

Third Filing, the Debtor's combined net monthly income is listed at -$2,542.00, which rendered

the Debtor's stated intention of reaffirming the mortgage debt impossible.


### *Discussion*

The Bankruptcy Code contains the following statutory language empowering the

Bankruptcy Court to grant *in rem* relief from the automatic stay:

> (4) with respect to a stay of an act against real property under
> subsection(a) [of § 362(a)] by a creditor whose claim is secured by an
> interest in such real property, if the court finds that the filing of the
> petition was part of a scheme to delay, hinder, or defraud creditors that
> involved either –
>
> (A) transfer of all or part ownership of, or other interest in, such real
>     property without the consent of the secured creditor or court approval;
>     or
> (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4).

The statutory authority to grant such relief was vested in the Bankruptcy Court when this

subsection was added to the Bankruptcy Code in 2005 with passage of the Bankruptcy Abuse

Prevention and Consumer Protection Act ("BAPCPA").[1]  This subsection further provides that if

an order granting relief under this subsection is recorded in compliance with applicable state law:

---

[1] In 2010 as part of the Bankruptcy Technical Corrections Act (hereafter, "TCA") Congress
revised section 362(d)(4), to require only that a Court find a "scheme to delay, hinder, *or* defraud
creditors" (emphasis added) rather than a "scheme to delay, hinder, *and* defraud creditors"

> [It] shall be binding in any other case under this title purporting to
> affect such real property filed not later than 2 years after the date
> of the entry of such order by the court, except that a debtor in a
> subsequent case under this title may move for relief from such
> order based upon changed circumstances or for good cause shown,
> after notice and a hearing.

*Id.*

Congress added § 362(d)(4) to the Bankruptcy Code to reduce the number of abusive

filings.  H.R. Rep.109-31(1) at 69 (2005). U.S. Code Cong. & Admin. News 2005, pp. 88, 138.

When utilized as intended by Congress, this section is an effective tool for secured creditors to

mitigate the damage caused by debtors who engage in conduct that hinders, delays or defrauds

secured creditors in the exercise of their rights under applicable state law.  To remedy this

problem, Congress provided the Bankruptcy Court with the power to grant to a secured creditor

*in rem* relief for two years with respect to specific property.  Therefore, any future filing by a

debtor claiming an interest in the real property subject to the *in rem* order will not result in the

imposition of the automatic stay with respect to that property.  The relief is targeted to affect the

specific real property regardless of whether the future debtor participated in the conduct giving

rise to granting *in rem* relief.

To avail itself of the protection of this section, the moving party must satisfy certain

statutory requirements.  First, the moving party must be a secured creditor, not the owner of the

real property.  Therefore, if a mortgagee has completed a foreclosure sale and title has passed to

the mortgagee or its assignee, this remedy is no longer applicable.  This statute is also

unavailable to a landlord, where there may be multiple filings by tenants.   Because the Movant

is a secured creditor and not the owner of the Property, this requirement is satisfied.   Second,

---

(emphasis added).  This change decreased the burden on the secured creditor so that it need only
prove that the scheme hindered, delayed or defrauded the creditor, not all three.

once an order for relief under § 362(d)(4) is granted, the moving party must record the order in compliance with applicable state law governing notices of interests or liens in real property.

The statute requires the Court to find that the debtor's current filing is part of a scheme, that the purpose of the scheme is to hinder, delay or defraud the creditor, and that the scheme involves either (i) a transfer of an ownership interest or other interest in the real property without the consent of the secured creditor or (ii) multiple bankruptcy filings affecting the property. A party seeking to modify the stay under any subsection of 362(d) has the burden of establishing a *prima facie* case. *In re O'Farrill*, 569 B.R. 586, 590-91 (Bankr. S.D.N.Y. 2017) (citing *In re Elmira Litho, Inc*., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)).

The language of § 362(d)(4) is broad and captures several different scenarios of bankruptcy abuse. Subsection (A) applies to schemes involving not only the transfer of an ownership interest in real property, but also to a transfer of "other interest(s) in" real property, so long as the transfer takes place without the consent of the secured creditor or court approval. Subsection (A) specifically speaks to any transfer of an ownership interest or other interest in the real property and requires the Court to conclude that it was undertaken pursuant to a scheme to hinder, delay or defraud the secured creditor. This subsection only requires the existence of one forbidden transfer. The transfer is not limited to an ownership interest and includes other forms of interests in real property, such as possessory rights or leasehold interests. Given that any such transfer would have the effect of hindering or delaying a secured creditor, the requirement of establishing a scheme would be satisfied unless the debtor could provide a sufficient explanation for the transfer. While subsection (A) is not relied on by the Movant in this case, the apparent reach of this subsection is significant.

Subsection (B) is the applicable subsection in this case. The Movant alleges that the multiple filings between the Debtor and the Spouse on the eve of scheduled foreclosure sales, along with the deficiencies in each filing, are evidence of a scheme to hinder, delay or defraud the Movant. There is nothing binding in the Second Circuit regarding the interpretation of this subsection, and in this Court's view, the elements do not appear to be susceptible to a bright-line test. A review of cases within the Second Circuit reflects a general reliance on two factors for finding a scheme to delay, hinder, or defraud creditors in the context of multiple filings for purposes of section 362(d)(4)(B). The predominant standard focuses on (1) "the timing and sequence of filings" and (2) the "good faith prosecution of [the cases]." *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009); *see also In re Richmond*, 513 B.R. 34, 38 (Bankr. E.D.N.Y. 2014) (citing the same test). However, some courts have concluded that an intent to hinder, delay or defraud the secured creditor may be inferred solely from the existence of multiple, strategically timed bankruptcy filings. *In re Blair*, Nos. 09–76150, 09–77562, 2009 WL 5203738 at *4 (Bankr. E.D.N.Y. Dec. 21, 2009); *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012). This Court believes that the focus of this section is the effect of the filing on the secured creditor's ability to utilize the full complement of powers granted under applicable state law, whether that be a foreclosure proceeding or some other remedy. When viewed through this lens, the conduct of the debtor while in bankruptcy is less relevant than the actual timing and existence of multiple filings. The existence of multiple filings on the eve of foreclosure alone, in this Court's view, is sufficient to establish a presumption of a scheme to hinder or delay the creditor, subject to the debtor's right to challenge this presumption. Because the relevant prior filings involve a failure to comply with the basic requirements under the Bankruptcy Code, the Court will analyze both elements.

i.       Multiple filings

In the case before the Court, this is the Debtor's first filing, but it is the third filing

involving the Property.  Between the Second Filing and the Third Filing, there was a state-

imposed moratorium on foreclosures due to the Covid-19 pandemic.  Each of the bankruptcy

petitions were filed on the eve of a scheduled foreclosure sale, resulting in a suspension of the

sale.  The Court is mindful of the fact that since it last analyzed this statute, the standard for

finding a scheme has changed.  In *In re Lemma*, 394 B.R. 315 (Bankr. E.D.N.Y. 2008), the

debtors had filed a combined total of three petitions and the secured creditor sought relief under

§ 362(d)(4).   The secured creditor in *Lemma* fell short in establishing that the debtors' conduct

evinced fraudulent intent which was required under the statute at that time.  The debtors in

*Lemma* actively opposed the relief requested and made Chapter 13 plan payments as well as

attempted to tender mortgage payments to the secured creditor.  *Id.* at 325.  Due to the 2010

amendments to this subsection, secured creditors need not establish that the conduct evidences a

scheme to defraud the creditor, but only that the scheme serves to either hinder, delay or defraud

the creditor.  The Court finds that in this case, the multiple filings shortly before scheduled

foreclosure sales evidences a scheme to hinder, delay or defraud the Movant.

ii.      Conduct of Debtors

Notwithstanding the changes to the statute, courts continue to examine the conduct of the

debtor or debtors in the prior cases and the current case to determine whether the multiple filings

constitute a scheme to either hinder, delay or defraud the creditor.  As stated above, the timing of

the prior filings of the Spouse, which were within days prior to scheduled foreclosure sales in

each instance, supports a finding of a scheme to hinder or delay the Movant. *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009); *In re Tajal Inv., LLC*, No. 12-28606, 2012 WL 6186159 *6 (Dec. 12, 2012). The Court can also consider whether there has been a change in circumstances from the previous filing and the current filing. *Id.* In this case, the general financial picture remained static from the First Filing to the Second Filing, with the Spouse showing combined monthly net income of -$328.80. By the Third Filing, the combined monthly net income had further decreased, reflecting a loss of -$2542.00. The amount of equity in the Property also decreased from the Second Filing to the Third Filing, from $140,000 to approximately $50,000. Therefore, the record reflects a deterioration in the financial circumstances of the Debtor and the Spouse as the filings continued.

The Debtor has not opposed the Motion, nor has the Debtor actively participated in prosecuting the Third Filing. The Debtor has failed to appear at the section 341 meeting of creditors and failed to file with the Court a financial management certificate. Based on the foregoing factors, the Court finds that the Movant has met its burden of proof under § 362(d)(4) and *in rem* relief is warranted.

iii.    Effect of Granting Relief

Having concluded that relief under § 362(d)(4) is warranted, the Property is now subject to the restrictions imposed by this subsection. Provided that the Movant complies with the recording requirements, from two years after the date of entry of an order granting the Motion, there shall be no stay affecting the Property based the filing of another petition during that time period. Section 362(d)(4) is viewed by some as an extreme remedy as it deprives parties from receiving the benefit of the automatic stay for two years. *In re O'Farrill,* 569 B.R. at 591 (other citations omitted). The Court recognizes that the automatic stay is the cornerstone of the Bankruptcy Code. *In re Cenargo*

*Intern., PLC*, 294 B.R. 571, 597 (Bankr. S.D.N.Y. 2003) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Environmental Protection*, 474 U.S. 494 (1986); *In re Colonial Realty Co.*, 980 F.2d 125, 133 (2d Cir. 1992) (other citation omitted)).  However, future debtors seeking the protection of the automatic stay with respect to property subject to an *in rem* order can, once the case is filed, come before the Court and demonstrate why they are entitled to the automatic stay.  In effect, the *in rem* order places the burden on these debtors to obtain relief from the *in rem* order, as opposed to placing the burden on the secured creditor to obtain relief from the automatic stay

Any debtor claiming an interest in the subject property may seek to have the stay imposed as to that property.  Such debtor needs to establish a change in circumstances or that there is good cause to have the stay imposed. The effect of this provision is to shift the burden onto any subsequent debtor to come forward with evidence warranting imposition of the automatic stay.  As a result, any further filings on the eve of a scheduled foreclosure sale will have no effect with respect to the property unless the debtor is successful in establishing good cause.

The burden shifting nature of this statute is consistent with § 362(c)(3) and (4), which require a debtor with prior filings dismissed within one year to show cause why the automatic stay should be either extended or imposed based on the debtor's ability to demonstrate their good faith. The major differences between the burden shifting in the two subsections are that under § 362(d)(4), the burden is placed on any debtor claiming an interest in the property whether they have ever filed a petition, and under § 362(c), the burden is placed on the debtor whose case or cases were dismissed.

Unlike the higher burden of clear and convincing evidence required to obtain relief from an order pursuant to § 362(c), the debtor need only prove that cause exists to grant relief from the order by a preponderance of the evidence.  This acts as a safety valve to permit the proverbial

honest but unfortunate debtor to obtain the full relief of the automatic stay notwithstanding the entry of an order under § 362(d)(4). When applied correctly, the comprehensive nature of § 362(d)(4) should act to circumvent abuses of the bankruptcy system while giving a deserving debtor a fresh start.

      iv.        Dismissed Cases and *In Rem* Relief

Another issue raised in this case is something many courts are seeing with greater frequency. In this case, the Trustee's motion to dismiss the case based on the Debtor's failure to appear at the § 341 meeting was heard on October 31, 2022. At the hearing on the Trustee's motion to dismiss, the Court marked the motion as submitted. The Motion was filed prior to the hearing on the Trustee's motion to dismiss the case, but the hearing on the motion to dismiss the case took place before this Memorandum Decision will be issued. In many instances, secured creditors are seeking relief under § 362(d)(4) where the case is scheduled for dismissal in a relatively short time frame. As a result of amendments to the Bankruptcy Code under BAPCPA, the clock for individual debtors in chapter 7 and chapter 13 cases begins ticking on the first day of the filing to complete all of the schedules and statement of financial affairs, among other documents. Pursuant to 11 U.S.C. § 521(i), if the debtor fails to file all of the documents required under § 521(a) within 45 days after the date of the filing of the petition, the case is automatically dismissed effective on the 46th day after the date of the filing of the petition. By the time the mortgagee has alerted the proper party of the need to file a motion seeking *in rem* relief, there is often insufficient time to file the motion, have it heard and have the order entered prior to expiration of the 45th day from the petition date.

This Court agrees with many other courts that Congress intended the automatic dismissal in this statute to be truly automatic. *See In re Soto,* 491 B.R. 307, 316 (1st Cir. B.A.P. 2013); *In*

*re Burgos*, 476 B.R. 107, 112 (Bankr. S.D.N.Y. 2012); *In re Hall*, 368 B.R. 595, 599 (Bankr.

W.D. Tex. 2007).  The Court does not have authority to withhold dismissal of a case under §

521(i) in order to hear matters which are scheduled for a date after the 45th day.  This places the

burden on mortgagees to act quickly to seek relief such as *in rem* relief under § 362(d)(4), but on

occasion there is insufficient time to obtain a hearing date.  The case gets dismissed and the

debtor has now bought additional time until another foreclosure sale is scheduled.  Then the

process begins anew if the debtor files another petition, if the debtor and others engage in serial

filings, or if the debtor transfers an ownership interest in the real property.

While dismissal under § 521(i) is automatic, dismissal does not have to be absolute.

Section 349 of the Bankruptcy Code speaks to the effect of dismissal as follows:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other
> than under section 742 of this title—
>
> > (3) revests the property of the estate in the entity in which such property was
> > vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

Since dismissal of a case revests property of the estate in the party that owned it prepetition,

property of the estate ceases to exist after a case is dismissed.  *In re Garnett*, 303 B.R. 274, 278

(E.D.N.Y. 2003).  As a result, the Bankruptcy Court is divested of jurisdiction over a debtor's

property once the case is dismissed.  However, this subsection expressly permits the Court to

order otherwise for cause.  In interpreting the relevant language, the Second Circuit has

determined that the Bankruptcy Court has the authority to exercise post-dismissal jurisdiction

over actions relating to the debtor's property which are pending in the Bankruptcy Court at the

time of dismissal.  *In re Porges,* 44 F.3d 159, 161 (2d Cir. 1995).  While noting that dismissal of

an adversary proceeding and any other proceeding related to the case is the general rule, the

Court may continue to exercise jurisdiction over a pending adversary proceeding.  *Id.* at 162-163.

The Second Circuit adopted the four factors enunciated by the Supreme Court *in*

*Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 n.7 (1988) when it analyzed whether a

district court should continue to exercise jurisdiction over pendent state claims after dismissal of

all federal claims.  The four factors are judicial economy, convenience to the parties, fairness and

comity.  *Id.*  While these factors do not fit neatly within the case at hand, it is clear that to the

extent the Court has scheduled a hearing on a motion for *in rem* relief and the hearing must be

marked off solely based on the debtor's failure to comply with certain basic requirements under

the Bankruptcy Code, principles of fairness and judicial economy would militate towards

retaining jurisdiction to hear the *in rem* motion.

At least one other court has relied on similar reasoning to retain jurisdiction over a

dismissed case in order to hear and determine a motion filed by a creditor for relief under §

362(d)(4).  In *In re Abdul Muhaimin*, 343 B.R. 159, 164 (Bankr. D. Md. 2006), the bankruptcy

court exercised its discretion to hear and determine a motion for *in rem* relief which was filed

prior to dismissal of a case.  In making its ruling, the court relied in part on *Matter of Querner,* 7

F.3d 1199, 1201–02 (5th Cir.1993), which analogized to cases regarding the authority of federal

district courts to retain pendent state claims after federal claims have been dismissed.  As the

court in *Abdul Muhaimin* pointed out, the Bankruptcy Court has the discretion to make this

determination.

In this proceeding, the relevant factors weigh in favor of retaining jurisdiction to hear and

determine the Motion.  The Motion was filed prior to the date of the hearing on the Trustee's

motion to dismiss the case.  Given the circumstances, it would be unfair to deny the Movant

relief it seeks solely on the basis that the Debtor failed to fulfill one of its statutory requirements

in this case.  The same result would occur if the Debtor's case was to be dismissed under § 521(i)

due to the Debtor's failure to file all required schedules and documents.  For these reasons, the

Court would retain jurisdiction in this case post-dismissal to hear and determine the Motion.

*Conclusion*

For the reasons set forth herein, the portion of the Motion seeking *in rem* relief with

respect to the Property under 11 U.S.C. § 362(d)(4) is granted.  An order consistent with this

Memorandum Decision shall be entered forthwith.



Dated: Central Islip, New York
November 10, 2022

Robert E. Grossman
United States Bankruptcy Judge